IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHARLES WILLIAM ROSENBUSH,

                            Plaintiff,

    v.                                           OPINION and ORDER

NANCY A. BERRYHILL,
Acting Commissioner, Social Security          18-cv-11-jdp
Administration,

                            Defendant.

---

Plaintiff Charles Rosenbush seeks judicial review of a final decision of defendant Nancy Berryhill, Acting Commissioner of Social Security, finding him not disabled under the Social Security Act. The administrative law judge (ALJ) found that Rosenbush had several severe impairments, but he concluded that Rosenbush retained the residual functional capacity to perform the full range of light work, subject to a few limitations.

On appeal, Rosenbush says that the ALJ erred in (1) finding Rosenbush not credible; (2) failing to consider his obesity in combination with his other impairments; (3) relying on the state agency medical consultants' finding that he could frequently finger and handle; (4) failing to consider a limitation found by the state agency medical consultants; and (5) relying on Rosenbush's noncompliance with a continuous positive airway pressure machine to discount evidence of fatigue. The case is scheduled for an oral argument on November 29, 2018, but the court concludes that oral argument is unnecessary. For the reasons discussed below, the court finds that the first three grounds warrant remand.

ANALYSIS

A. **Credibility determination**

At the hearing, Rosenbush testified that he needed to frequently alternate between sitting, standing, and walking. In particular, he said that he could stand in place for only about five or ten minutes before feeling severe pain in his hips and back, R. 66–67, he could sit in a chair for only about 10 or 15 minutes before feeling severe mid- and upper-back pain, R. 67–68, and that he could walk only about the length of one supermarket aisle before taking a break. R. 65–66. Rosenbush also testified that he felt sharp pain in his back when he held his arms outstretched in front of him. R. 60–61. The ALJ found Rosenbush's testimony not credible, and determined that Rosenbush could sit, stand, or walk, individually or in combination, throughout an entire eight-hour workday and frequently reach in all directions. R. 38–39. The court concludes that errors in the ALJ's credibility determination require remand.

As a preliminary matter, Rosenbush argues that the ALJ's credibility determination was based on the wrong legal standard because the ALJ used "meaningless boilerplate" that has been repeatedly criticized by the Court of Appeals for the Seventh Circuit. *See e.g. Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016). But the use of the discredited boilerplate is not itself a reversible error. *Id.* The court must still consider whether the ALJ otherwise supported his conclusion by pointing to information that justifies his credibility determination. *Pepper v. Colvin*, 712 F.3d 351, 368 (7th Cir. 2013). The ALJ's credibility determination is given deference and the court will overturn it only if it is "patently wrong." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). But the ALJ must still evaluate the entire record and build a

"logical bridge" from the evidence to his conclusions. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008).

Here, the ALJ failed to build a logical bridge. His analysis repeatedly misconstrued both Rosenbush's testimony and the record.

First, the ALJ said that Rosenbush's alleged symptoms were not consistent with reports in the record that he moved tables and chairs, traveled via plane and car for hours, unloaded boxes, mowed the yard, and walked six minutes on a treadmill. R. 38. But the record showed that Rosenbush repeatedly injured himself while performing these types of activities. R. 550, 575, 645. An ALJ may not use a claimant's ill-advised attempts to engage in activities beyond his capability to support a conclusion that the claimant is capable of performing equivalent full-time work. *Scrogham v. Colvin*, 765 F.3d 685, 700 (7th Cir. 2014). That Rosenbush injured himself is evidence that he cannot actually perform these activities.

The Commissioner argues that even if most of these activities resulted in injury, they are still inconsistent with Rosenbush's testimony. The Commissioner points out that Rosenbush said that he could not walk more than a single supermarket aisle. But Rosenbush also testified that he could walk further while leaning on a shopping cart, R. 64, and the same is presumably true while leaning on a lawn mower or the rails of a treadmill. The Commissioner points out that Rosenbush said he could not even hold a saltshaker with his arms outstretched in front of him. But an inability to hold an item in outstretched arms is not inconsistent with an ability to temporarily lift items off the ground, especially when doing so causes injury. So Rosenbush's activities do not contradict his alleged symptoms.

Second, the ALJ said that contrary to Rosenbush's testimony, the record showed that he improved with occupational therapy. R. 38. But that is a misstatement of Rosenbush's

3

testimony. Rosenbush testified that after he received carpal tunnel surgery, the carpal tunnel in his left wrist initially worsened and then slowly improved. R. 69–70. He also said that his left wrist is now better than it was pre-surgery, but that it was still worse than his right wrist. R. 70. This testimony is consistent with the therapy records that the ALJ refers to. R. 532–33. The Commissioner disagrees and says that Rosenbush "testified that he had little or extremely short-term improvement with treatment for his carpal tunnel syndrome," Dkt. 17, at 13. But it appears that the Commissioner is actually referring to Rosenbush's testimony regarding epidural steroid injunctions. *See* R. 71. Those injections were a treatment for back pain, not for carpal tunnel, so this testimony is not inconsistent with the treatment reports.

Third, the ALJ found that Rosenbush was inconsistent in his statements about job searches. At the hearing, Rosenbush testified that he had not looked for work since 2013. R. 57. But in a treatment note from one month prior to the hearing, a nurse noted that Rosenbush was "currently looking for a job." R. 640. The ALJ reasoned that Rosenbush made inconsistent statements about his job search. R. 38. But the treatment note was not a statement taken from Rosenbush—it was a note written by a nurse. And the nurse did not indicate if Rosenbush had actually sought and applied for jobs or if he had merely stated that he was unemployed. Even if there is a potential inconsistency, the ALJ should have asked Rosenbush for an explanation before finding him not credible. *See Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014) (ALJ should have asked claimant to explain inconsistent statements that she went outside only three times a week but also visited her mother every weekday). So this was not a good reason to find Rosenbush not credible.

The ALJ stated several more reasons for finding Rosenbush not credible, but these reasons only merit a brief mention. R. 38. The ALJ said that Rosenbush did not have

4

neurological defects and that his musculoskeletal impairments did not appear severe enough to cause the alleged pain. But as explained below, the ALJ did not consider the aggravating effect that Rosenbush's obesity had on those impairments. The ALJ said that Rosenbush passed a commercial driver's license physical examination in September 2013, after the alleged disability onset date, but the ALJ did not explain how this examination compared to the agency's standards for disability. And the ALJ said that Rosenbush "sat comfortably" during his January 2015 neurosurgical evaluation, *see* R. 474, but he did not explain how the ability to sit at a doctor's appointment is equivalent to an ability to sit for an entire eight-hour workday.

Because the ALJ did not support his credibility determination with substantial evidence, the court will remand for the ALJ to conduct a new credibility determination.

## B. Effect of obesity on other impairments

Rosenbush contends that the ALJ did not consider the effect of his obesity in combination with his other impairments. The ALJ found that Rosenbush suffered from obesity, along with degenerative changes throughout his spine, mild degenerative joint disease in his hips, sleep apnea, carpal tunnel syndrome, degenerative joint disease in his left thumb and wrist, and right lateral epicondylitis. R. 27. But he determined that (1) Rosenbush's spine and hip impairments were relatively mild and did not limit Rosenbush's ability to sit, stand, or walk; and (2) Rosenbush's elbow, wrist, and finger impairments were mild enough that he could frequently handle and finger. R. 38–39. Rosenbush argues the ALJ would not have made these findings if he had considered the aggravating effects of Rosenbush's obesity on his impairments. *See Goins v. Colvin*, 764 F.3d 677, 681 (7th Cir. 2014) (obesity, even if not disabling in itself, can aggravate spinal disorders).

Although the ALJ recognized that Rosenbush's obesity "can only serve to increase many of his symptoms," he said it was caused by Rosenbush's failure to follow a proper diet and exercise. R. 38. Rosenbush consistently reported that he followed a diabetic diet, R. 32, 444, 580, 584, 590, 600, 605, 623, 629, but the ALJ reasoned that Rosenbush's ongoing obesity and hyperlipidemia was evidence that he did not, in fact, "follow a proper diet or a proper diabetic diet." R. 37–38. The ALJ did not cite any opinions stating that that Rosenbush was noncompliant with a prescribed dietary treatment. His finding was based on a personal interpretation of Rosenbush's lab results and BMI.

It is well established that ALJs should not attempt to determine the significance of particular medical findings themselves. *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016); *see also Goins v. Colvin,* 764 F.3d 677, 680 (7th Cir. 2014) ("[P]laying doctor [is] a clear no no, as we've noted on numerous occasions."). And when it comes to obesity, an ALJ should consider a claimant's failure to diet only if a treating source has prescribed a specific diet as treatment. SSR 02-1p. General statements in the record that a claimant "should" lose weight do not equal prescribed treatment. *Id.* So the ALJ's personal determination that Rosenbush did not try hard enough to diet and exercise was not a proper ground for the ALJ to ignore the effect of his obesity on his impairments.

The Commissioner argues that even if the ALJ erred in discounting Rosenbush's obesity, Rosenbush is not entitled to any additional limitations because the ALJ already limited him to light work and in *Summers v. Berryhill*, the Court of Appeals for the Seventh Circuit held that an obese claimant could perform a range of light work. *See* 864 F.3d 523, 528 (7th Cir. 2017). But *Summers* did not hold that *all* obese claimants were capable of performing light work, only that the claimant in that case was. In this case, the ALJ was required to consider whether

Rosenbush's obesity, in combination with his other impairments, affected his ability to sit or stand for an entire workday.

## C. Ability to frequently finger and handle

The ALJ found that Rosenbush could frequently finger and handle. R. 40. Rosenbush contends that the ALJ failed to consider the combined effect of his carpal tunnel surgery, joint disease in his left thumb and wrist, and lateral epicondylitis in his right elbow. He argues that the ALJ improperly relied on the findings of the state agency medical consultants, despite those doctors not having reviewed the entire record.

The state agency medical consultants rendered their opinions without receiving evidence of Rosenbush's carpal tunnel release surgery, R. 491, the occupational therapy following that surgery, R. 532–33, or the X-Ray of Rosenbush's thumb that showed mild narrowing of joints and osteophyte formation. R. 555. This meant that they had no objective evidence regarding Rosenbush's grip strength and were unaware that Rosenbush was diagnosed with degenerative joint disease. An ALJ should not rely on an outdated assessment if later evidence containing new diagnoses reasonably could have changed the opinion. *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018).

Instead of getting a new medical opinion, the ALJ interpreted this evidence himself to determine its effect on Rosenbush's ability to finger and handle. R. 31. As stated above, the ALJ may not "play doctor." He is required to rely on medical opinions to determine the significance of medical findings.

## D. Other arguments

Rosenbush raises two more objections, but neither provide an independent ground for remand.

First, Rosenbush contends that the ALJ erred in his RFC analysis because he ignored the limitations on sitting, standing, and walking given by the state agency medical consultants. He says that the doctors indicated that Rosenbush could not sit, stand, or walk for more than "[a]bout 6 hours in an 8-hour workday." R. 88, 101. But Rosenbush is mistaken in his reading of their reports. The state doctors were using a standardized form, and "6 hours" was the least limiting option available on that form.[1] Any ALJ familiar with the form would have recognized that the state agency medical consultants were actually providing *no* limitation for sitting, standing, or walking.

Second, Rosenbush contends that the ALJ erred in his analysis of Rosenbush's fatigue. He argues that that the ALJ relied on Rosenbush's noncompliance with his treatment for sleep apnea, but because medical records state that Rosenbush's fatigue was "likely multifactorial," R. 382, he would probably still be fatigued even if he had complied with treatment. But even assuming Rosenbush is correct, he does not explain what additional limitations the ALJ should have provided for fatigue. The ALJ already gave restrictions regarding driving and environmental hazards. R. 39. And Rosenbush testified that his sit, stand, and walk limitations were pain-related, not due to fatigue. On remand, if Rosenbush can identify evidence of additional fatigue-related impairments, he is free to ask the ALJ to consider that evidence.

---

[1] *See* https://secure.ssa.gov/apps10/poms/images/SSA4/G-SSA-4734-BK-1.pdf.

CONCLUSION

On remand, the ALJ should (1) conduct a new credibility assessment; (2) reconsider the effect of Rosenbush's obesity on his other impairments; and (3) reassess Rosenbush's ability to finger and handle.

ORDER

IT IS ORDERED that the decision of defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, denying plaintiff Charles Rosenbush's application for disability insurance benefits and supplemental security income is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The November 29, 2018 oral argument is CANCELED as unnecessary.

Entered November 28, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge